[Civ. No. 40751. First Dist., Div. Four. May 4, 1978.]

FIREMAN'S FUND AMERICAN INSURANCE COMPANY,
Plaintiff and Respondent, v.
ALFRED M. ESCOBEDO, SR., et al., Defendants and Appellants.

612

■■■■■■■■

■■■■■■■■
■■■■■■■■

## COUNSEL

Tunney, Carlyle, Vanasse & Gannon, Gerald P. Tunney, Bostwick & Rowe, Everett P. Rowe, Hoge, Fenton, Jones & Appel and H. R. Lloyd, Jr., for Defendants and Appellants.

Wines, Robinson, Wood & Anderson and Thomas R. Fellows for Plaintiff and Respondent.

## OPINION

**CHRISTIAN, J.**—This appeal is concerned with the attempted rescission of an assigned risk automobile liability policy allegedly obtained through misrepresentation.

Employer's Casualty Company notified its insured, Alfred S. Escobedo, following an accident in which Escobedo was involved, that as of the date of its original issuance it was rescinding, pursuant to section 331 of the Insurance Code, the automobile liability insurance policy issued to him. Robert R. and Dorothy Place, who had been involved in the automobile accident with Escobedo, made a demand for arbitration against their insurer, Fireman's Fund American Insurance Company, pursuant to the uninsured motorist provisions of their own policy. Ultimately Fireman's Fund paid them $30,000, the limit of the uninsured motorist coverage.

■■■■

Fireman's Fund commenced the present action against Employer's Casualty Company, Employer's National Insurance Company, Alfred S. Escobedo, Alfred M. Escobedo and Robert R. and Dorothy Place, seeking a declaration that the coverage afforded Alfred S. and Alfred M. Escobedo by Employer's Casualty was applicable to the Escobedo-Place collision. After jury trial, the court rendered judgment determining that Employer's' rescission was effective as against the insureds (the Escobedos) but ineffective as against Robert and Dorothy Place and their insurer, Fireman's Fund. The Places and the Escobedos moved for a judgment notwithstanding the verdict and for a new trial. These motions were denied. The Escobedos have appealed from the judgment and from the order denying their motion for judgment n.o.v. Robert and Dorothy Place similarly appeal from the judgment and from the order denying their motion for judgment n.o.v. Employer's Casualty appeals from the judgment.

Alfred S. Escobedo, Jr. had been diagnosed as a schizophrenic when he was 16 years old. Later, in 1968, Escobedo suffered an injury at his job. His mental health deteriorated and he entered a state psychiatric hospital. After three weeks, Escobedo was discharged from the state hospital and was admitted to the psychiatric division of San Jose General Hospital, where he remained for about four more weeks. He was then released to outpatient psychiatric care.

Escobedo had been diagnosed as suffering from a residual schizophrenic reaction associated with severe anxiety. A psychiatrist who had treated him testified that Escobedo's mental condition did not affect his ability to drive an automobile safely, that Escobedo was quite intelligent, took care of his own pocket money, shaved himself, dressed meticulously, and did well at school. According to the same witness, there was no impairment of motor functions and manual dexterity was normal.

When Escobedo applied for automobile liability insurance under the California Assigned Risk Plan, his application was prepared by an employee of the insurance agency through which the policy was issued. The only question on the application directed to determine whether an applicant was under any mental or physical disability was question seven, which read: "IMPAIRMENT—Has applicant (or anyone who usually drives the applicant's motor vehicle) any mental or physical disability?" On Escobedo's application the box following this question was marked "no." The form, unlike familiar life insurance questionnaires, did not request

information concerning the applicant's history of medical care. Escobedo's physician testified that, at the time of the application, Escobedo would not have been able to make a judgment as to whether he had a mental disability. When he applied for insurance, Escobedo held a valid and unrestricted driver's license.

The application for insurance was forwarded to the offices of the California Automobile Assigned Risk Plan (CAARP). CAARP made an initial determination of eligibility, found that Escobedo was eligible for assigned risk coverage, "bound" the coverage effective October 29, 1969, and assigned the risk to Employer's Casualty (see Cal. Admin.Code, tit. 10, § 2444).

Employer's Casualty received the application together with the notification of the assignment. In accordance with its customary procedure, Employer's requested an investigative report from Retail Credit Company. It also requested information on Escobedo from the Department of Motor Vehicles.

The investigative report furnished by Retail Credit Company to Employer's cost $5. A more comprehensive and detailed report (providing such information as last injury, operation, illness, name of treating physician, and name of hospital) was available from Retail Credit Company at essentially the same cost; such a report was not ordered by Employer's.

A Retail Credit Company investigator visited the Escobedo home and asked questions of Escobedo's mother. Information concerning Escobedo's mental and physical problems was furnished to the investigator. Specifically, Mrs. Escobedo informed the investigator that her son had been hospitalized for psychiatric care and that he was presently under the care of a psychiatrist. The investigator omitted the information from her report.

The assigned risk policy was issued by Employer's Casualty effective October 29, 1969. On March 25, 1970, Escobedo received a new driver's license. He continued to pay the premiums on the policy, and in October 1970, a renewal policy was issued, bearing a new policy number. From the time of the initial investigation by Retail Credit until after the automobile accident, no further investigation was made by Employer's

except that an additional driver's license report was obtained from the Department of Motor Vehicles.

On February 11, 1971, Escobedo was driving an automobile which collided with a vehicle driven by Robert Place. Upon receipt of an accident report, Employer's requested a special investigation from Retail Credit Company regarding Escobedo's mental condition. The new Retail Credit report stated that in October 1969 Escobedo had been under treatment for schizophrenia and had previously been hospitalized for that condition. Upon receiving this report, Employer's notified Escobedo by letter that his insurance policy was rescinded as of its date of inception.

The California Automobile Assigned Risk Plan (CAARP) is an unincorporated association of insurance companies authorized by section 11623 of the Insurance Code[1] to administer the assigned risk automobile insurance program which is established under sections 11620 through 11627. (*Nipper* v. *California Auto. Assigned Risk Plan* (1977) 19 Cal.3d 35, 40, 41 [136 Cal.Rptr. 854, 560 P.2d 743]; *Cal. State Auto. etc. Bureau* v. *Downey* (1950) 96 Cal.App.2d 876, 879-880 [216 P.2d 882].)

The purpose of the Assigned Risk Plan is to assure that automobile liability coverage is available to persons who would be unable to secure coverage through normal channels. (*See Billington* v. *Interinsurance Exchange* (1969) 71 Cal.2d 728, 740 [79 Cal.Rptr. 326, 456 P.2d 982]; *Cal. State Auto. etc. Bureau* v. *Downey, supra,* 96 Cal.App.2d at pp. 881-882; see also Cal. Admin.Code, tit. 10, § 2400.)[2] All insurance companies writing liability policies in this state are required to accept a share of assigned risk applications.

---

[1]Insurance Code section 11623: "To carry out the purpose of this article, the subscribing insurers may form their own organization which shall, subject to review by the Insurance Commissioner, administer and operate the plan. The cost of such organization shall be fairly proportioned among the subscribing insurers to whom assignments may be made."

[2]California Administrative Code, title 10, section 2400:

"This plan consists of the rules and regulations contained in this article and is approved and issued by the Insurance Commissioner pursuant to Article 4, Chapter 1, Part 3, Division 2 of the Insurance Code.

"(a) To provide a means by which risks of applicants for automobile bodily injury and property damage liability insurance who are eligible for such insurance but are unable to procure it through ordinary methods may be assigned to insurers admitted to transact liability insurance;

Whether an applicant is eligible for an assigned risk automobile insurance policy is a determination made initially by CAARP. Upon determining that the risk is eligible for assignment, CAÁRP designates an insurer, assigns the risk to such insurer, and notifies the applicant. (Cal. Admin.Code, tit. 10, § 2444.) Coverage becomes effective on the day following the date of mailing of the assignment notice to the designated insurer. (Cal. Admin.Code, tit. 10, § 2444.) CAARP forwards to the insurer the original application, the notice of the effective date of the coverage, and the prescribed per-car deposit which is to be credited by the insurer against the policy premium. (Cal. Admin.Code, tit. 10, § 2444.5.)

Within 15 working days after receipt of the notice of designation from CAARP, the designated insurance company must either ratify the assignment and issue the assigned risk policy, effective at the time specified by CAARP, or it must notify CAARP and the applicant that it believes that the applicant is not eligible for insurance under the plan, "in which event the reasons underlying such belief shall be furnished [to CAARP]." (Cal. Admin.Code, tit. 10, § 2450.) If the insurance company notifies CAARP and the applicant that the applicant is not eligible for insurance under the plan, the insurer "shall request permission of [CAARP] to cancel the coverage . . . ." (Cal. Admin.Code, tit. 10, § 2450, subd. (b).) If CAARP receives a notification from the insurer that the applicant is not eligible for insurance, CAARP must within 10 days after receipt of such notification review the application and all the facts and circumstances surrounding the risk and make a finding whether or not the applicant is eligible for insurance under the plan. (Cal. Admin.Code, tit. 10, § 2450.1.) If CAARP determines that the designated insurer was correct and the applicant is not eligible for insurance, the insurer then sends a notice of cancellation to the applicant. (Cal. Admin.Code, tit. 10, § 2450.2.) If, however, CAARP finds that the applicant is eligible for insurance under the plan, the designated insurer must ratify the assignment, issue the policy and notify the applicant within five days after receiving a communication from CAARP that the applicant is eligible for an assigned risk policy. (Cal. Admin.Code, tit. 10, § 2450.3.)

"(b) To make medical payments insurance available, subject to the conditions hereafter stated, to four-wheel vehicles classified and rated as private passenger automobiles; and

"(c) To establish a procedure for the equitable apportionment of such applicants among all such insurers for insurance of such risks."

The regulations also provide that an insurance company may refuse to issue a renewal policy under the plan on the basis that the insured is not eligible for insurance. (Cal. Admin.Code, tit. 10, § 2482.) The insurer must furnish CAARP with a statement of the facts justifying its intention to refuse to review. (Cal. Admin.Code, tit. 10, § 2482.1.) CAARP then reviews all the facts and circumstances surrounding the risk and makes a finding whether the applicant is eligible for insurance under the plan. If CAARP finds that the insured is eligible for insurance, the insurer must issue a renewal policy as an assignment under the plan. (Cal. Admin. Code, tit. 10, §§ 2482.3, 2482.5.)

The regulations also contain provisions enabling the designated insurer to cancel a policy because of ineligibility, fraud, misrepresentation or nonpayment of premium; but there is no provision in the regulations for rescission of an assigned risk policy. (See Cal. Admin.Code, tit. 10, §§ 2470, 2471, 2471.1, 2472.)

Presently the only requirement for coverage under the assigned risk plan is the possession of a valid and unrevoked operator's license. (See *Nipper* v. *California Auto. Assigned Risk Plan, supra,* 19 Cal.3d at p. 44.) However, in May of 1971, at the time of Employer's attempted rescission of Escobedo's policy, California Administrative Code, title 10, section 2431.5a (repealed eff. June 1, 1971; Reg. 71, No. 14) provided: "An applicant is not eligible for insurance if the applicant or anyone who normally or usually drives the automobile, or anyone who drives it with the express or implied consent of the applicant, has a major mental or physical disability."[3]

Appellants Places, Escobedos and Fireman's Fund contend that, once the risk has been assigned and the designated insurer has "ratified" the coverage, section 2470 specifies the only method open to an insurer to relieve itself of an assigned risk which was accepted. Appellant Employer's Casualty argues that section 2470 applies only to cancellation, not to rescission, of an insurance policy and that rescission is a statutory remedy (Ins. Code, §§ 331, 338, 359) not affected by the administrative regulations comprising the assigned risk plan.

---

[3]Section 11624 of the Insurance Code sets forth permissive standards which may be considered by CAARP in processing applications for insurance. Subdivision (a) (4) of section 11624 states that CAARP may consider the applicant's "age and mental, physical and moral characteristics *which pertain to his ability to safely and lawfully operate an automobile.*" (Italics added.)

■ Section 331 of the Insurance Code provides: "Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance." Concealment is defined as "Neglect to communicate that which a party knows, and ought to communicate, . . ." (Ins. Code, § 330; see also Ins. Code, §§ 332, 334, 338, 339.) In addition to concealment as a ground for rescission, section 359 of the Insurance Code provides that a contract of insurance may be rescinded on the ground of material misrepresentation: "If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false." (Ins. Code, § 359; see Ins. Code, § 360.)

The California Assigned Risk Plan was enacted to provide liability insurance coverage for applicants who are *in good faith* entitled to but unable to procure such insurance through ordinary methods. (Ins. Code, § 11620.) Nothing in the authorizing legislation suggests that the laws applying to insurance policies in general are not applicable to the assigned risk plan. The regulations promulgated by CAARP deal only with cancellation and not rescission. Cancellation and rescission are not synonymous. One is prospective, while the other is retroactive. As stated in *Mamula* v. *McCulloch* (1969) 275 Cal.App.2d 184, 197 [79 Cal.Rptr. 571]: " 'To "cancel" a contract means to abrogate so much of it as remains unperformed. It differs from "rescission," which means to restore the parties to their former position. The one refers to the state of things at the time of the cancellation; the other to the state of things existing when the contract was made.' [Citation.]" (See *State Farm Mut. Auto Ins. Co.* v. *Brown* (1974) 40 Cal.App.3d 385, 397 [115 Cal.Rptr. 213].) Appellant Employer's Casualty is correct in its contention that the statutory remedy of rescission is applicable to assigned risk policies.

■ Appellants Places, Escobedos and Fireman's Fund contend that Employer's was not entitled to rescind because it had failed to conduct a reasonable investigation concerning Escobedo's insurability. In *Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659 [79 Cal.Rptr. 106, 456 P.2d 674], the California Supreme Court held that "an automobile liability insurer must undertake a reasonable investigation of the insured's insurability within a reasonable period of time from the acceptance of the application and the issuance of a policy. This duty directly inures to the benefit of third persons injured by the insured. Such an injured party, who has obtained an unsatisfied judgment against the insured, may properly proceed against the insurer; the insurer cannot

then successfully defend upon the ground of its own failure reasonably to investigate the application." (71 Cal.2d at p. 663.)

In *Barrera,* the Supreme Court accepted the trial court's finding of misrepresentation because, considered as a whole, the evidence as to whether the insured had misstated his past driving record to the insurance agent was conflicting. (See *Barrera* v. *State Farm Mut. Automobile Ins. Co., supra,* 71 Cal.2d 659, 665.) However, the court concluded that, based upon the "quasi-public" nature of the insurance business and the public policy underlying the financial responsibility law, an insurance company owes a duty both to the insured and to the public to conduct a reasonable investigation of insurability within a reasonable time after issuance of an automobile liability policy. The duty sounds either in tort or in quasi-contract. (71 Cal.2d at p. 668.) If an insurer fails to make a reasonable investigation of the applicant's insurability within a reasonable time from issuance of the policy, breach of the duty to investigate is penalized by a loss of the right of rescission. (71 Cal.2d at pp. 672-673, 678-679.)

The reasonableness of the insurer's investigation of insurability is ordinarily a question of fact. As stated in *Barrera*: "Whether or not the automobile liability insurer has breached its duty to the public to make a reasonable investigation within a reasonable time after the issuance of the policy ordinarily constitutes a question for the trier of fact." (71 Cal.2d at p. 681.) Among the factors to be taken into account in assessing the reasonableness of an investigation are the cost of obtaining the information from the Department of Motor Vehicles or elsewhere, the availability of the information and the general administrative burden of making such an investigation. "These factors must be weighed against the importance of the protection of innocent members of the public against the consequences of automobile owners driving with voidable liability policies." (71 Cal.2d at p. 682.)

Appellant Fireman's Fund points out that "all applicants for 'assigned risk' coverage are, by definition 'substandard risks.' (Ins. Code, § 11620; 10 Admin.Code, § 2400(a), 2430.) Whenever an insurer receives an assignment, the insurer is automatically placed on notice that the applicant has been denied coverage through ordinary channels, and that other insurers have already found the applicant to be 'uninsurable.' Having received the assigned policy, the insurer is also in receipt of the insured's 'application.' (10 Admin. Code, § 2444.5.) If the insured's

original application adequately discloses those facts upon which it is apparent that coverage had been denied elsewhere, then it is obvious that the application does not contain any concealment or fraudulent representation upon which an issue of rescission could later arise. If, however, the original application fails to disclose why the applicant has been denied coverage elsewhere, then the insurer is immediately apprised of the fact that the application is at least incomplete. In short, the very moment the insurer receives the assignment, the insurer is in possession of facts sufficient to know whether or not suspicion concerning the applicant is justified." Escobedo's application did not indicate why he was not insurable through normal channels; yet Employer's did not inquire as to his insurability. However, it cannot be said that, as a matter of law, Employer's' investigation was unreasonable. Employer's did obtain a report from the Department of Motor Vehicles and a report from Retail Credit Company within a reasonable time after the application was made.

■ Appellants Places and Escobedos point to evidence that Escobedo's mental condition was disclosed to the investigator. They argue that the duty to investigate insurability is a nondelegable one, and since Retail Credit was chosen by Employer's to perform its nondelegable duty, Employer's should be estopped to deny knowledge of Escobedo's condition. Appellants contend that the trial court erred in refusing to so instruct the jury. Appellants requested the following instruction which the trial court refused: "The duty, on the part of the petitioner, Employer's Casualty Company, is a non-delegable affirmative duty and the petitioner cannot escape liability for any failure to perform the duty thus imposed by entrusting it to an independent contractor."

It could perhaps be inferred from the fact that the report of the Retail Credit investigator contained nothing concerning Escobedo's psychiatric history, that no disclosure of that history was made. But there was evidence from which the jury could have inferred that the investigator received a full statement of Escobedo's history and withheld that information from her report. Employer's contends that this default should not be chargeable to it. But the duty to investigate insurability inures directly to members of the public; the duty is a nondelegable one. In *Delgado v. W. C. Garcia & Associates* (1963) 212 Cal.App.2d 5, 8 [27 Cal.Rptr. 613], the court stated that "The general rule is that duties to the public are nondelegable duties and that under such circumstances, the general contractor remains liable [citation]." Therefore, Employer's is

chargeable with knowledge of any inform ation which was imparted to the investigator. An insurance company, of course, cannot rely solely upon the insured's answers on his application where it conducts an independent investigation which reveals the facts. (*DiPasqua* v. *California etc. Life Ins. Co.* (1951) 106 Cal.App.2d 281, 284-285 [235 P.2d 64].) The trial court committed reversible error in refusing the requested instruction.

Other contentions advanced by appellants Escobedos, Places and Fireman's Fund are insubstantial and do not require discussion.

The order denying motions for judgment notwithstanding the verdict is affirmed. The judgment is reversed; in view of this disposition, the appeal of Employer's is dismissed as moot. Appellants Escobedos, Places and Fireman's Fund will recover from Employer's Casualty their costs on appeal.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied May 30, 1978.