[No. C000297. Third Dist. Aug. 17, 1987.]

INTERNATIONAL SERVICE INSURANCE COMPANY, Plaintiff and Respondent, v.
LOUIS GONZALES, Defendant and Appellant.

## COUNSEL

William B. Seabridge for Defendant and Appellant.

Weintraub, Genshlea, Hardy, Erich & Brown and Sara A. Clark for Plaintiff and Respondent.

## OPINION

**CARR, Acting P. J.**—Defendant Louis Gonzales appeals from the summary judgment entered in a declaratory relief action brought by plaintiff insurer to determine if there was insurance coverage for damages for personal injuries sustained by defendant Gonzales in a vehicular accident in California. The policy in question, a motor vehicle disability policy, had been issued in Texas to a Billy Bob Jones. In the underlying accident, defendant Gonzales was in a collision with a vehicle driven by Larry Cross but solely owned by and registered to the wife of Larry Cross, formerly the wife of Billy Bob Jones.

On appeal, defendant contends the trial court erred in applying Texas law in determining the issue of coverage and that a proper application of California law would have produced a contrary result. We disagree and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 10, 1983, defendant's car collided with a 1980 Buick Regal driven by Larry Cross when Cross failed to yield the right of way at an intersection. Cross's wife, Marie, was riding in the passenger seat at the time of the accident, which occurred in California.

Larry Cross reported the accident and notified his insurance company, Grange Mutual. It denied liability as the 1980 Buick was not insured under

the Crosses' policy. Marie Cross then notified plaintiff insurer, which had issued a policy covering the 1980 Buick to Billy Bob Jones (Jones), Marie Cross's ex-husband. The policy was originally issued to Jones in Texas in September 1980. At that time, Marie was married to Jones and they resided in Lubbock, Texas. No claim has ever been made by either defendant Gonzales or the Crosses against Jones.

In his application for coverage, Jones listed two drivers, himself and Marie Jones and two cars, a 1979 Buick and the 1980 Buick Regal. After checking the driving records of both drivers, plaintiff issued a policy designating Jones as the "named insured" with the following pertinent provisions:

"PART A—LIABILITY COVERAGE

"Insuring Agreement

"We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. . . .

" 'Covered Person' as used in this Part means: [¶]1. You or any family member for the ownership, maintenance or use of any auto or trailer. [¶]2. Any person using your covered auto.

"DEFINITIONS

"Throughout this policy, 'you' and 'your' refer to: [¶]1. The 'named insured' shown on the Declarations, and [¶]2. The spouse if a resident of the same household.

". . . . . . . . . . . . . . . . . . . .

" 'Family member' means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

". . . . . . . . . . . . . . . . . . . .

" 'Your covered auto' means: [¶]1. Any vehicle shown on the Declarations."

The Joneses' marriage was dissolved in July 1982 and Marie was awarded the 1980 Buick. Title was transferred into Marie's name in August 1982,

but Jones remained liable on a note and contract to General Motors Acceptance Corporation (GMAC) until the loan was paid off in February 1983.

In August 1982, Jones renewed the policy without notifying plaintiff the 1980 Buick had been transferred to Marie or that the marriage had been dissolved.[1] In February 1983 Marie moved to California. She married Larry Cross in May 1983, one month before the accident which is the subject of this appeal.

Plaintiff insurer denied liability coverage for the accident on two grounds: (1) Marie was not an insured under the terms of the policy as she was no longer married to Jones; and (2) Jones, the named insured, no longer retained an insurable interest in the car. Plaintiff then amended the policy, dropping the 1980 Buick and "Mrs. Marie Jones" from coverage and refunded to Jones the amount paid for premiums for the 1980 Buick.

In March 1984, plaintiff insurer filed in Sacramento Superior Court a complaint for declaratory relief, naming as defendants Larry and Marie Cross and defendant Gonzales and seeking a determination that it owed no obligation to them under the policy. In May 1985, plaintiff insurer filed a motion for summary judgment, urging as a matter of California law the policy provided no coverage for the accident as Marie Cross was neither a named insured nor a member of the insured's household and Jones had no insurable interest in the car at the time of the accident.

In response, defendant filed a motion for summary judgment, contending the policy was ambiguous as it did not expressly state that a spouse loses insured status if he or she separates or divorces. He further urged that either he or Marie Cross should be allowed to reform the contract to conform to their reasonable expectations of coverage.

The trial court asked for briefing on whether the law of Texas or California was applicable but in its ruling on the motions found Jones did not have an insurable interest in the 1980 Buick at the time of the accident and that under either California or Texas law plaintiff could not be held to have provided coverage for the accident. It further concluded Marie Cross had no interest in the policy when it was renewed in August 1980 and the lien to GMAC paid off in February 1983, as she was no longer a "family member," a spouse or a resident of the name insured's household. Accordingly, the court granted plaintiff's motion for summary judgment. This appeal followed.[2]

---

[1] In deposition testimony, Marie Cross asserted she paid to Jones one-half of the premium in August 1982. Jones denied this assertion.

[2] Only defendant Gonzales appeals from the order granting plaintiff's motion for summary judgment.

DISCUSSION

I

■ Urging that California law would have produced a different result, defendant Gonzales contends the trial court erred in applying Texas law to determine whether coverage was provided under the insurance policy.[3] Gonzales cites three reasons in support of his argument the court should have applied California law: (1) This is a problem of conflict of laws and California, as opposed to Texas, has the strongest interest in the litigation as the accident occurred here and the Crosses and defendant Gonzales are California residents; (2) plaintiff failed to timely invoke Texas law, thereby waiving any right to invoke foreign law; and (3) the policy contemplated performance outside Texas and the rule that the law of the state where the injury occurred is controlling. Citing Civil Code section 1646,[4] plaintiff insurer urges that the law of Texas was properly applied or, alternatively, that the result would be the same under either Texas or California law.

From our reading of the record defendant proceeds on two false premises, first that the trial court applied Texas law and secondly that if California law had been applied, a different result would have ensued. Even assuming the trial court applied Texas law, we do not identify a conflict of law problem. ■ The sole fact that two states are implicated does not create a conflict of laws, and if the laws of the two states are the same, no conflict exists. (*Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 580 [114 Cal.Rptr. 106, 522 P.2d 666].)

■ Defendant contends the contract provisions are ambiguous, and if interpreted pursuant to California law, a different result would have been reached. ■ As we determine, *infra,* plaintiff insurer owed no duty to defendant or the Crosses under either Texas or California law.

II

We consider first an interpretation of the contract under California law. ■ Defendant contends the trial court was incorrect in holding the

---

[3]The trial court's ruling does not expressly state Texas law was applied in interpreting the policy. It merely states "[w]hether or not the validity of the policy is considered under California law [citations] or Texas law . . . the result is the same." Plaintiff insurer does not dispute defendant's contention the court applied Texas law. Presumably this conclusion is based on the opening paragraph of the ruling, which states "whether or not a contract is illegal is determined by the law of the place where the contract is made [citation] [w]hether or not an insured has an insurable interest is an issue of the contract's legality."

[4]California Civil Code section 1646 provides: "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."

contract did not provide coverage. He urges the policy is ambiguous in two ways: (1) It does not specify the duration of coverage once the resident spouse attained the status of insured and is silent about the effect of divorce; and (2) it purports to insure without qualification a "covered person," defined as "any person using [the] covered auto."[5] Without stating what the law of Texas is on interpreting ambiguities in an insurance contract, defendant's argument goes thus: California law requires that any ambiguity in a contract be construed against its draftsman; the contract is ambiguous and under a California law construction of the insurance contract, there would have been coverage for defendant Gonzales's damages; ergo, the trial court erred in finding no coverage and in holding that California law is identical to Texas law. One of the several problems with this approach is there is no ambiguity in the contract. The express terms of the policy provide coverage to the "named insured" and "[t]he spouse if a resident of the same household." (Italics added.) The policy states the company will pay damages for injury or damage for which any "covered person becomes legally responsible because of an auto accident." A "covered person" is defined as the named insured, the resident spouse, any "family member" related by blood, marriage or adoption who is a resident of the named insured's household, and *any person using the named insured's "covered automobile."* (Italics added.) Neither Marie nor Larry Cross falls within these definitions. Marie Cross was no longer entitled to coverage as a spouse residing in the household after the dissolution of her marriage to Jones in July 1982. Although she previously qualified for coverage, she does not remain insured unless she continues to meet the prerequisites of coverage. Defendant's further contention of ambiguity is that the policy does not inform the parties of the effect of divorce. He points out the word "divorce" is absent from the contract. We perceive the use of the word "spouse" is sufficient to apprise the parties that marriage is a prerequisite to coverage as a spouse of the named insured. It follows if one divorces, he or she is no longer a "spouse."

Moreover, Larry Cross is not entitled to coverage as a "person using the insured's 'covered auto'" as the 1980 Buick no longer qualified as a "covered auto" at the time of the accident because Jones no longer had an insurable interest in the car. ■ Under either Texas or California law, no person can recover on an insurance policy unless he or she has an insurable

---

[5] Defendant urges the 1980 Buick is a "covered automobile" under the policy and that Larry Cross falls within the definition of a "covered person" as defined ("any person using [the] covered auto.") He assumes the court found Cross was not covered as he did not have Jones's permission to drive the "covered auto" and concludes the absence of any reference in the contract to the necessity of such permission is an ambiguity to be construed against the insurer. Defendant misinterprets the court's ruling. The court found Cross is not a "covered person" because the 1980 Buick is no longer a "covered auto" under the "insurable interest rule."

interest in the property insured. (Cal. Ins. Code, § 280;[6] *California Food Service Corp.* v. *Great American Ins. Co.* (1982) 130 Cal.App.3d 892 [182 Cal.Rptr. 67]; *Smith* v. *Eagle Star Insurance Co.* (Tex. 1963) 370 S.W.2d 448.) An insurable interest exists when the insured has a direct pecuniary interest in the preservation of the property and will suffer a pecuniary loss as an immediate and proximate result of its destruction. (*California Food Service Corp., supra,* 130 Cal.App.3d at p. 897; *Leggio* v. *Millers National Insurance Co.* (Tex.Civ.App. 1965) 398 S.W.2d 607, 609.) An interest in the property insured must exist when the insurance takes effect and when the loss occurs. (Cal. Ins. Code, § 286;[7] *Osborne* v. *Security Ins. Co.* (1957) 155 Cal.App.2d 201, 205 [318 P.2d 94]; *Smith* v. *Eagle Star Insurance Co., supra,* 370 S.W.2d at p. 448.)

■ In the present case, Jones no longer retained an interest in the 1980 Buick after ownership was transferred pursuant to the dissolution decree and liability was extinguished by the payment of the outstanding debt to GMAC in February 1983.[8] The court did not err in concluding that plaintiff was not obligated to provide coverage under either Texas or California law.

### III

■ Defendant asserts plaintiff insurer owes a duty to Marie Cross to provide insurance as she contracted for coverage. Citing *United States Fidelity and Guaranty Company* v. *Winkler* (8th Cir. 1965) 351 F.2d 685 and *United Farm Bur. Mut. Ins. Co.* v. *Brantley* (1978) 176 Ind.App. 178 [375 N.E.2d 235], he contends either he or Marie Cross should be permitted to reform the contract to conform to the reasonable expectations of coverage. We disagree.

Preliminarily we note defendant lacks standing to reform the contract under either Texas or California law. ■ Reformation of a liability in-

---

[6] California Insurance Code section 280 provides: "If the insured has no insurable interest, the contract is void."

[7] California Insurance Code section 286 provides: "An interest in property insured must exist when the insurance takes effect, and when the loss occurs, but need not exist in the meantime; and interest in the life or health of a person insured must exist when the insurance takes effect, but need not exist thereafter or when the loss occurs."

[8] Defendant concedes an insurance policy is void if the insured lacks an insurable interest in the property, but argues California Insurance Code section 304 applies to extend insurance coverage when joint owners of property transfer interest in the property to one owner. That section provides: "In the case of partners, joint owners, or owners in common, who are jointly insured, a transfer of interest by one to another thereof does not avoid insurance, even though it has been agreed that the insurance shall cease upon an alienation of the subject insured." The section is inapplicable here as Jones and Marie Jones did not jointly apply for insurance and because there is no showing the car was jointly held prior to dissolution of the marriage.

surance policy may be sought only by the contracting parties, their assignees or the intended beneficiaries of the insurance contract. (*American Home Ins. Co.* v. *Travelers Indemnity Co.* (1981) 122 Cal.App.3d 951 [175 Cal.Rptr. 826]; *Merrimack Mut. Fire Ins.* v. Allied Bank (Tex.Civ.App. 1984) 678 S.W.2d 574.) ■■■ Defendant is not a contracting party nor is he an assignee or intended beneficiary of the contract.

Nor is Marie Cross entitled to reform the contract. Although she was initially insured as the spouse of Jones, she lost coverage when the marriage was dissolved and is therefore no longer an intended beneficiary. The cases cited by defendant are inapposite. In *United States Fidelity and Guaranty Company* v. *Winkler, supra,* 351 F.2d 685, the Eighth Circuit held an insurance company could not deny liability for a car accident on the basis that title in the car passed from husband to wife on the day of the accident. In contrast to the present case, the court applied Missouri law, which did not require that the insured retain an insurable interest in the property. (*Id.,* at p. 688.)

In *United Farm Bur. Mut. Ins. Co.* v. *Brantley, supra,* 375 N.E.2d 235, the Indiana Court of Appeals held an ex-wife was covered as a named insured under the policy even though she was no longer a spouse residing in the same household. The court reasoned the insurance company was liable because the car, awarded to the wife in the divorce proceedings, was still held in the name of both husband and wife and because the risk undertaken by the insurer had not changed. (*Id.,* at p. 237.) In the present case, the car is no longer in Jones's name and the risk has changed significantly.

Moreover, the record is devoid of any evidence of mistake or fraud to justify reformation of the contract pursuant to Civil Code section 3399.[9] Marie Cross was not mistakenly omitted from the policy. The contract accurately reflects the intentions of the parties at the time it was made. Plaintiff insurer did not contract to provide coverage for an ex-wife now living in California and the court has no power to make a new contract for the parties. (*American Home Ins. Co.* v. *Travelers Indemnity Co., supra,* 122 Cal.App.3d at p. 963.)

## IV

■■■ Defendant further contends plaintiff insurer should be estopped to deny liability as it failed to investigate the insurability of Marie at the time

---

[9] California Civil Code section 3399 provides: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised, on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith, and for value."

the policy was renewed in August 1982. Citing *Fireman's Fund American Ins. Co. v. Escobedo* (1978) 80 Cal.App.3d 610 [145 Cal.Rptr. 785], defendant asserts an insurer loses the right to rescind a contract if it fails to conduct such investigation.

This argument is unpersuasive. The cited case pertained to the initial insurability of an applicant for insurance. In this case plaintiff insurer did investigate the initial insurability of Marie Jones. We find no authority and defendant cites us to none to support the contention that an insurer must reinvestigate the insurability of an applicant each time the policy is renewed.

## V

██ Defendant finally contends that this court should find the public policy requiring compulsory motor vehicle insurance for the protection óf innocent victims of automobile accidents outweighs the rule requiring that an insured retain an interest in the property to sustain a claim for coverage. He asserts the "insurable interest" rule is designed to prevent wagering contracts and that the rationale for the rule is inapplicable in the present case. He urges we should ignore the rule to further the more important public policy favoring innocent victims of car accidents. This argument is meritless in light of the explicit statutory provision codifying the rule requiring an insurable interest. (Cal. Ins. Code, § 280.)

### DISPOSITION

The judgment is affirmed.

Roberts, J.,* concurred.

SIMS, J.—I concur in all aspects of the opinion except for the analysis in part I. In my view, this case is governed by Texas law, a fact which does not affect the outcome.

"California has rejected the traditional mechanical solutions to choice-of-law problems and adopted foreign law . . . when it is appropriate in light of the significant interests in the particular case." (*Travelers Ins. Co. v. Workmen's Comp. App. Bd.* (1967) 68 Cal.2d 7, 11, fn. omitted [64 Cal.Rptr. 440, 434 P.2d 992]; see also *Henderson v. Superior Court* (1978) 77 Cal.App.3d 583, 592-593 [142 Cal.Rptr. 478]; *Buskuhl v. Family Life Ins. Co.* (1969) 271 Cal.App.2d 514, 521 [76 Cal.Rptr 602].) California adopts the analysis

---

* Assigned by the Chairperson of the Judicial Council.

of the Restatement Second of Conflicts of Laws (the Restatement) in determining the appropriate law to apply in the interpretation of a contract. (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §§ 37-43, pp. 77-82.)

Section 6 of the Restatement provides the general rules for determining the proper choice of law where a potential conflict arises. That section indicates that a court will follow the statutory directives of its own state with respect to the choice of law. California has such a statutory directive set forth in Civil Code section 1646, which states that "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Since the contract does not state one specific state of performance, section 1646 indicates it is to be interpreted according to the law of the state where it was made, i.e., under Texas law.

Even assuming arguendo that section 1646 does not control the choice of law in this case, when I analyze other factors set out in the Restatement, I reach the same conclusion.

Section 188 of the Restatement provides that where the parties have not chosen the applicable law governing the contract, the interpretation of that contract is to be "determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties . . . [¶] . . . [T]he contacts to be taken into account . . . to determine the law applicable to any issue include: [¶](a) the place of contracting, [¶](b) the place of negotiation of the contract, [¶](c) the place of performance, [¶](d) the location of the subject matter of the contract, and [¶](e) the domicil, residence, nationality, place of incorporation and place of business of the parties."

Section 188 provides that these contacts should be evaluated according to their relative importance to the particular issue. However, as the Restatement also notes in the comment to section 193, "The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state. Situations where this cannot be done, and where the location of the risk has less significance, include (1) where the insured object will be more or less *constantly on the move from state to state* during the term of the policy and (2) where the policy covers a group of risks that are scattered throughout two or more states. The importance of the risk's principal location will also vary somewhat from case to case. It enjoys greatest significance when an immovable is involved, such as when

the risk insured against is damage by fire to a particular building. In the case of chattels, the significance of the state of the risk's principal location diminishes with the length of time that it can be anticipated the chattel will be in other states during the term of the insurance. *Provided, however, that the risk will be in a particular state for the major portion of the insurance period, the risk's principal location is the most important contact to be considered* in the choice of the applicable law, at least as to most issues." (*Id.,* at com. (b), pp. 611-612, italics added.) The Restatement suggests examples of chattels "constantly on the move from state to state" as ships, trucks, airplanes and railroad cars. (*Id.,* at com. (a), p. 610.)

Analyzing the contacts set forth in the Restatement reveals the following: Texas was both the place of contracting and the place of negotiation of this contract.

With respect to the place of performance, the contract clearly contemplated the principal location was the state of Texas, since the insurance contract states that the vehicles insured would be garaged principally at Billy Bob Jones's house in Lubbock, Texas. Moreover, the contract indicates the 1980 Buick Regal would be driven a distance of five miles each way between the place where it was principally garaged and the driver's place of work. Marie was listed in the policy as an additional driver *residing in the home* of the named insured, Billy Bob Jones.

The location of the subject matter of the contract (the car) was also contemplated by the parties to be in Texas. In contrast to the examples of chattels "constantly on the move from state to state" suggested in section 193 of the Restatement, such as commercial vehicles like ships, trucks, airplanes or railroad cars used to move freight or passengers for hire, the parties here contemplated that *this* car would operate principally in Texas. While the insurance contract sensibly provided for coverage outside of Texas, because a car can be driven outside the state, this isolated fact obviously cannot be used to conclude the principal place of performance and principal location of the contract's subject matter would be outside Texas.

Finally, the insurance company has its place of business in Texas and Marie, at the time the contract was executed, lived with her then-husband Billy Bob in Texas.

I therefore conclude the important contacts between this insurance contract and Texas require the contract to be interpreted according to the laws of that state. (See generally, 1 Witkin, *op. cit. supra,* §§ 42-50, pp. 81-88.)

If Larry Cross is to be afforded coverage under the insurance policy issued to Billy Bob Jones, he must first come within the definition of a "covered person" under the policy language; in other words, he must first be found to be a person using "your covered auto" within the meaning of Texas law.

A Texas case dispositively discusses the pertinent contractual language and interprets the phrase "any person using your covered auto." In *Black* v. *BLC Ins. Co.* (Tex.Civ.App. 1986) 725 S.W.2d 286, on facts materially similar to those at issue here and based upon identical insurance policy language, the Texas Court of Appeals held that coverage is not provided under these circumstances unless the named insured owns, possesses or controls the use of the automobile. (*Id.,* at p. 288.)

In my view, we are bound to accept this interpretation of the insurance policy language under Texas law. Larry Cross is not a covered person under the insurance policy issued to Billy Bob Jones, since Billy Bob did not own, possess or control the use of the 1980 Buick Regal at the time of this accident. Because Larry Cross is not a "covered person" under the policy as construed by Texas law, I do not reach the question whether Billy Bob Jones retained a lawful insurable interest against liability arising out of use of the automobile under California law.