**Lyle W. HUNTER, Plaintiff,**

v.

**NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE, and Does 1–50, inclusive, Defendant.**

**Case No. 08cv939 DMS (NLS).**

United States District Court, S.D. California.

March 3, 2009.

Dena M. Acosta, Encinitas, CA, for Plaintiff.

Susan Elizabeth Basinger, Higgs Fletcher and Mack, San Diego, CA, Joseph J. Hasman, Morgan J. Milner, Chittenden Murday and Novotny, Chicago, IL, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

DANA M. SABRAW, District Judge.

This diversity action arises out of an insurance death benefits dispute between Plaintiff Lyle W. Hunter and Defendant North American Company for Life and Health Insurance. The parties filed cross-motions for summary judgment regarding whether benefits are due upon the death of a "secondary insured." The matter was heard on February 27, 2009, with Anton Gerschler and Dena Acosta appearing on behalf of Plaintiff, and Morgan J. Milner and Susan Basinger appearing on behalf of Defendant. The Court grants Defendant's motion and denies Plaintiff's cross-motion for the reasons set forth below.

### I.

### BACKGROUND

The facts in this case are undisputed. On December 3, 1986, Plaintiff applied for an Amoco life insurance policy, insuring himself as the primary insured and his then-wife, Vickie Jo Hunter, as a secondary insured. (Undisputed Material Fact, "UMF" 1.) Plaintiff's application was approved, and on February 19, 1987, Policy 627831219 ("Policy") was issued, which insured Plaintiff for $100,000 and Plaintiff's former spouse for $75,000. (UMF 2.) Defendant subsequently assumed responsibility for the Policy. (UMF 3.)

The Policy defines "secondary insured" in its "Definitions" section, as follows:

SECONDARY INSURED

A. *The Primary Insured's lawful spouse* for whom:

1. application is made; and

2. coverage is provided under the policy.

(Policy, Mayer's Decl. Ex. A, at 6) (emphasis added).

The Policy terminates coverage for secondary insureds in its "General Provisions" section, as follows:

17. TERMINATION—. . . .

*Coverage* under the policy *for a secondary insured terminates* on the first premium due date *after the occurrence of the earlier of the following:*

A. the *date the individual ceases to qualify as a secondary insured;* or

B. the date the policy terminates.

(*Id.* at 8) (emphasis added).

On February 19, 1998, Plaintiff and his former spouse divorced. (UMF 8.) Although the Policy provided a mechanism for converting secondary coverage, neither Plaintiff nor his former spouse sought to convert the secondary coverage. (UMF 9.) Plaintiff continued paying secondary coverage premiums and never notified Defendant of the divorce. (UMF 14.) Ms. Hunter died on December 6, 2006. (UMF 10.) On December 27, 2006, Plaintiff submitted a claim to the Policy proceeds. (UMF 11.) During the claim process, Defendant learned for the first time that Plaintiff and Ms. Hunter had divorced. (UMF 12.) In a March 15, 2007 letter, Defendant rejected Plaintiff's claim on grounds that secondary coverage terminated on the date of divorce. Defendant re-

funded all secondary coverage premium payments made by Plaintiff after the divorce. (UMF 14.)

On March 14, 2008, Plaintiff filed this action in San Diego County Superior Court. (Compl. ¶ 1.) Defendant removed the action to this Court on the basis of diversity jurisdiction. (Doc. 1.) Defendant thereafter filed its motion for summary judgment regarding whether "secondary coverage for a 'lawful spouse' can continue in effect after the secondary insured (i.e., the lawful spouse) and the primary insured divorce." (D Mot. at 1–2.) On January 30, 2009, Plaintiff filed his cross-motion for summary judgment, contending the Policy is ambiguous and its termination provision is contrary to the reasonable expectations of an insured. (P X–Mot. at 5.)

## II.

### LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure where there is an absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The moving party can satisfy this burden in two ways: (1) by presenting evidence to negate an essential element of the non-

moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23, 106 S.Ct. 2548. If the moving party fails to meet this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If the moving party meets this initial burden, the the nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). When making its determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

## III.

### DISCUSSION

Defendant contends Plaintiff's former spouse is not covered as a secondary insured under the "plain and unambiguous" language of the Policy: coverage for Ms.

Hunter terminated following the couple's divorce. (D Mot. at 6.) Plaintiff contends coverage must be resolved in his favor, because the Policy's termination provision is insufficiently clear and concise to "impart notice to the policyholder that divorce would affect coverage." (P X–Mot. at 3.)

## A. Principles of Contract Interpretation

Under California law, interpretation of an insurance policy is a question of law. *Waller v. Truck Ins. Exchange, Inc.,* 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995); *United States v. Sacramento Mun. Util. Dist.,* 652 F.2d 1341, 1343 (9th Cir.1981). While insurance contracts may have special attributes, they are interpreted using ordinary rules of contract interpretation. *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 10 Cal. Rptr.2d 538, 833 P.2d 545 (1992). The court must first look to the language of the contract to ascertain its plain meaning. *Waller,* 11 Cal.4th at 18, 44 Cal.Rptr.2d 370, 900 P.2d 619 (citing Cal. Civ.Code § 1638). The language of an agreement is interpreted in its "ordinary and popular sense, unless used by the parties in a technical sense." *Id.* (citing Cal. Civ.Code § 1644). Courts will not strain to create an ambiguity where none exists. *Reserve Ins. Co. v. Pisciotta,* 30 Cal.3d 800, 807, 180 Cal.Rptr. 628, 640 P.2d 764 (1982). Thus, the parties' intent is ordinarily determined from the written provisions of the insurance policy. If the policy language is clear and explicit, it governs. *Waller,* 11 Cal.4th at 18, 44 Cal.Rptr.2d 370, 900 P.2d 619.

However, if the policy language is ambiguous, then the objectively reasonable expectations of the policy holder are considered. *Montrose Chem. Corp. v. Admiral Ins. Co.,* 10 Cal.4th 645, 666–67, 42 Cal.Rptr.2d 324, 913 P.2d 878 (1995); Cal.

Civ.Code § 1649 ("If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it."). If the "reasonable expectations" approach does not resolve the ambiguity, courts interpret the ambiguity against the drafter (the insurer), since that party caused the ambiguity to exist. *AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807, 822, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990) (citing Cal. Civ.Code § 1654).

Finally, exclusions and termination provisions that purport to take away or limit coverage reasonably expected by the insured must be "conspicuous, plain and clear" to be enforceable. *MacKinnon v. Truck Ins. Exchange,* 31 Cal.4th 635, 639, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (2003); *Paramount Properties Co. v. Transamerica Title Ins. Co.,* 1 Cal.3d 562, 569, 83 Cal.Rptr. 394, 463 P.2d 746 (1970). Dictionary meanings, the context of the entire policy, and commonsense may be employed by the court to understand how the insured might reasonably interpret the exclusionary language. *MacKinnon,* 31 Cal.4th at 649–50, 3 Cal.Rptr.3d 228, 73 P.3d 1205.

## B. Policy Coverage: First and Third Claims for Relief

In his first claim for relief, Plaintiff asserts that Defendant breached its insurance contract by failing to pay benefits due. In his third claim for relief, Plaintiff seeks a declaratory judgment that the divorce decree had no effect on coverage under the Policy.

### 1. Plain Meaning of the Policy

Defendant argues that under the clear language of the Policy, Plaintiff is not entitled to benefits upon the death of his former spouse. (D Mot. at 4.) According to

Defendant, the Policy defines a secondary insured as "[t] he Primary Insured's lawful spouse." (*Id.*) At the time of Ms. Hunter's death, she was not Defendant's spouse because they had divorced. (*Id.*) Plaintiff appears to contest the issue by arguing that "there is no provision delineating the 'qualifications' for a secondary insured other than that provided in the definition, which specified conditions were satisfied at the time coverage was bound." (P X–Mot. at 5.) Defendant, however, correctly cites to *Int'l Serv. Ins. Co. v. Gonzales,* 194 Cal.App.3d 110, 239 Cal.Rptr. 341 (Cal.Ct. App.1987), for the proposition that once a prerequisite to coverage no longer exists, coverage ceases to exist. (D's Opp. at 4.) In *Gonzales,* an insured argued that a vehicle casualty insurance policy was ambiguous because it "did not expressly state that a spouse loses insured status if he or she separates or divorces." *Id.* at 115, 239 Cal.Rptr. 341. The California Court of Appeal rejected the argument:

> Defendant's further contention of ambiguity is that the policy does not inform the parties of the effect of divorce. He points out the word "divorce" is absent from the contract. We perceive the use of the word "spouse" is sufficient to apprise the parties that marriage is a prerequisite to coverage as a spouse of the named insured. It follows if one divorces, he or she is no longer a "spouse."

*Id.* at 117, 239 Cal.Rptr. 341. Here, the term "lawful spouse" is similarly unambiguous. Under the terms of the Policy, secondary coverage for Ms. Hunter ceased to exist upon dissolution of marriage.

Plaintiff further contends that the termination provision's "ceases to qualify" language is ambiguous. (P. X–Mot. at 4–5.) Citing *State Farm Mut. Auto. Ins. Co. v. Jacober,* 10 Cal.3d 193, 207, 110 Cal.Rptr. 1, 514 P.2d 953 (1973), Plaintiff argues that

an insurer has an obligation to draft a policy to avoid such ambiguity. Plaintiff argues, "if the only meaning to be ascribed to the phrase 'ceases to qualify' in the termination provision, is a divorce, then it would have been just as easy for [Defendant] to use" the term divorce. (*Id.*) Defendant, however, correctly notes that the Policy language "ceases to qualify" is plain and unambiguous. The termination provision applies to two kinds of secondary insureds: (1) spouses, and (2) children. Indeed, an ambiguity would be created if the termination provision used the term "divorce," because the prerequisites to coverage for the two kinds of secondary insureds are different for each. The term "ceases to qualify" makes clear that coverage is terminated once a secondary insured no longer meets the prerequisites for coverage. *See Gonzales,* 194 Cal. App.3d at 117, 239 Cal.Rptr. 341.

Plaintiff argues that Defendant's "reliance on [*Gonzales* ], for the proposition that a spouse loses insured status upon divorce is misplaced." (Reply at 2.) According to Plaintiff, the principles underlying a life insurance contract are different from those involved in an automobile liability policy. Plaintiff argues a divorce decree does not abrogate the rights of the spouse to the proceeds of a life insurance policy that was issued prior to divorce, citing *Shaw v. Board of Administration,* 109 Cal.App.2d 770, 773–774, 241 P.2d 635 (Cal.Ct.App.1952). In addition, Plaintiff argues that a spouse's insurable interest continues so long as the family law court retains jurisdiction over the matter to award future spousal support. (*Id.; see* Mayers Decl. Ex. C, at ¶¶ 5–6.) Both arguments are unavailing.

*Shaw* is inapposite because it deals with vested rights of beneficiaries, not the extent and scope of coverage. 109 Cal. App.2d at 774, 241 P.2d 635 ("A decree of

divorce in and of itself has no effect on the right of a wife to the proceeds of a policy on the life of the [insured] husband designating her as beneficiary issued prior to divorce of the parties.") Indeed, while a "decree of divorce in and of itself has no effect" on a beneficiary's rights, it follows that when coverage under a policy (i.e., one's insured status) is predicated upon a condition which no longer exists, then coverage also ceases to exist; that is, the "covered" person becomes "noncovered." Here, coverage for the secondary insured is predicated upon that insured being the "lawful spouse" of the primary insured. Because one's status as a spouse ends with divorce, so does coverage under the Policy. Plaintiff's second argument is also unavailing, as the principle he cites—continuation of spouse's insurable interest—is limited to the context of division of marital property upon dissolution. *See In re Marriage of Gonzalez,* 168 Cal.App.3d 1021, 1026–1027, 214 Cal.Rptr. 634 (Cal.Ct.App.1985) (affirming dissolution award because "[a] life insurance policy in the hands of the noncovered [beneficiary] spouse is a useful form of security for a reserved spousal support obligation" of the insured or covered spouse.)

## 2. Termination Provision

■ Despite the plain meaning of the term "secondary insured," Plaintiff contends that his former spouse remained a secondary insured under the Policy because the termination provision is contrary to the reasonable expectations of an insured. Plaintiff argues that the termination provision takes away "his reasonable expectation that upon the death of his former wife, he would receive the benefits of a life insurance policy that he had paid premiums on for almost twenty years." [1] (Reply at 3.)

■ To be enforceable, a policy provision limiting coverage otherwise reasonably expected under the policy must be drafted such that a reasonable purchaser of insurance would have both noticed and understood it. *Ponder v. Blue Cross of So. Calif.,* 145 Cal.App.3d 709, 719, 193 Cal. Rptr. 632 (1983). The California Supreme Court has held:

> Termination provisions which purport to curtail the insurer's liability *in a manner inconsistent with the insured's reasonable expectations* are closely analogous to exclusionary provisions; in both cases the insurer attempts to carve out an area of non-coverage in a manner which does not clearly and adequately apprise the insured of the consequences.

*Paramount Properties,* 1 Cal.3d at 569, 83 Cal.Rptr. 394, 463 P.2d 746 (emphasis added); *see TIG Ins. Co. of Michigan v. Homestore, Inc.,* 137 Cal.App.4th 749, 760, 40 Cal.Rptr.3d 528 (Cal.Ct.App.2006) ("Most exclusions limit the scope of coverage an insured would reasonably expect; the requirement they be conspicuous and clear is intended to protect the insureds from unexpected and unreasonable denials of coverage.").

The termination provision here clearly states that a secondary insured's coverage is terminated "on the date the individual ceases to qualify" as a secondary insured. (Policy, at 8.) As discussed, a secondary insured is defined as the primary insured's "lawful spouse." (*Id.* at 6.) It is readily understood that a divorced spouse is no longer one's "lawful spouse." Termination of such coverage is therefore not inconsistent with an insured's objectively reasonable expectations. *See Gonzales,* 194 Cal. App.3d at 117, 239 Cal.Rptr. 341 ("[T]he use of the word 'spouse' is sufficient to apprise the parties that marriage is a prerequisite to coverage as a spouse of the

---

**1.** The Court notes that the Policy is still in effect, with Plaintiff covered as primary in-

sured and the Policy to pay cash value on its maturity date. (Policy, at 1.)

named insured.") A "conspicuous, plain and clear" statement is not required here, because the termination provision does not "take[ ] away or limit[ ] coverage reasonably expected by the insured." *TIG Ins. Co.*, 137 Cal.App.4th at 760, 40 Cal.Rptr.3d 528 (heightened rule of construction did not apply because policy's rescission provision did not deny coverage in unexpected or unreasonable manner). Because coverage under the Policy is conditioned upon the secondary insured being the "lawful spouse" of the primary insured, a condition which ceased to exist, Plaintiff is not entitled to death benefits upon the passing of his former spouse as she was not insured under the Policy at the time of her death. Defendant is therefore entitled to judgment as a matter of law on Plaintiff's first and third claims for relief.

## C. Plaintiff's Second Claim for Relief

 In Plaintiff's second claim for relief, he alleges Defendant breached the covenant of good faith and fair dealing. However, "[i]n California, an insurer cannot breach the duty of good faith and fair dealing unless benefits are due under the policy." *In re National Western Life Ins. Deferred Annuities Litigation*, 467 F.Supp.2d 1071, 1088 (S.D.Cal.2006). Because Ms. Hunter was not covered under the Policy at the time of her death, there can be no bad faith by Defendant.

## IV.

### CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for summary judgment and denies Plaintiff's cross-motion for summary judgment.

**IT IS SO ORDERED.**