[No. C041467. Third Dist. Mar. 25, 2003.]

UNITED SERVICES AUTOMOBILE ASSOCIATION, Plaintiff and Respondent, v.
DAVID A. PEGOS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and II.

**COUNSEL**

Porter, Scott, Weiberg & Delehant and Brendan J. Begley for Defendant and Appellant.

Schuering Zimmerman & Scully, Keith D. Chidlaw and Christian Koster for Plaintiff and Respondent.

**OPINION**

**ROBIE,** Unless it has conducted a reasonable investigation as to the insurability of its insured, an insurance company may not rescind an

automobile insurance policy based upon the material misrepresentations of its insured *after the insured injures a third party. (Barrera v. State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659, 681 [79 Cal.Rptr. 106, 456 P.2d 674] *(Barrera)*.) This requirement is to protect the public from injury by the insured's acts rather than to reward a dishonest insured.[1]

We conclude this obligation to investigate applies when the insured adds a new car to an existing insurance policy. We conclude the trial court erred in granting the summary judgment motion of plaintiff United Services Automobile Association (USAA).

Triable issues of fact remain here as to whether: (a) USAA conducted a reasonable investigation into the use of the car USAA added to Rosie L. Hall's existing insurance policy; and (b) Hall told USAA she did not intend to use that car as a taxicab. We shall reverse the judgment.

## FACTUAL BACKGROUND

On November 3, 1999, Hall asked a representative of USAA, Scott Cameron, to add two cars to her existing insurance policy: a 1990 Ford Crown Victoria and a 1991 Dodge Caravan. At the time she applied for insurance for the Ford Crown Victoria, the car had a commercial license plate.

Cameron testified he asked Hall whether she was going to use the Ford Crown Victoria or Dodge Caravan "to carry passengers for profit." Cameron declared Hall responded in the negative. Hall, on the other hand, submitted a declaration that she was never asked this question. USAA added both cars to the policy.

It is undisputed USAA would not have insured either car if it had known Hall intended to use them as taxicabs. It is also undisputed that other than asking Hall about her intended use for the cars, USAA conducted no further investigation concerning their use.

On December 8, 1999, Hall got into a traffic accident in the Ford Crown Victoria and injured David A. Pegos. On March 15, 2000, Hall was involved in a second accident in the Dodge Caravan while operating it as a taxi.

---

[1] Even when the insurance company has forfeited this right of rescission by failing to make such an investigation, it is not without remedies. "The insurer may still prosecute a cause of action against the insured for damages for wrongful misrepresentation, after satisfying the injured person's claim, or, in an action brought by the insured, after he has satisfied a judgment against him by the injured person, defend on the ground of misrepresentations in the application." *(Barrera, supra,* 71 Cal.2d at p. 681.) Moreover, the insurance company may be able to cancel the existing policy. *(Ibid.)*

PROCEDURAL BACKGROUND

On February 7, 2001, USAA sued Pegos and Hall for declaratory relief, alleging Hall's misrepresentations to USAA about the intended use of the cars constituted grounds for rescission of the insurance policy *ab initio*.

USAA and Pegos filed cross-motions for summary judgment. USAA claimed Hall's misrepresentation as to the use of the cars constituted grounds for rescission as a matter of law. Pegos opposed this motion on the grounds that triable issues of fact remained as to whether Hall misrepresented her intended use. Pegos also opposed USAA's motion because triable issues of fact remained as to the investigation conducted by USAA into the insurability of the cars. In his motion, Pegos argued USAA's failure to further investigate Hall's misrepresentations barred the rescission cause of action as a matter of law.

The trial court granted USAA's motion and denied Pegos's motion. The trial court concluded USAA had no obligation to conduct any investigation concerning the insurability of the Ford Crown Victoria. Pegos appeals.

DISCUSSION

I, II*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

III

*The Barrera Rule Applies to the Addition of Vehicles to a Policy*

 Pegos argues the trial court erred in granting USAA's summary judgment motion because triable issues exist as to whether USAA conducted a reasonable investigation within a reasonable time after Hall asked USAA to add the Ford Crown Victoria to her policy. We agree.

The seminal case in this area is *Barrera, supra,* 71 Cal.2d 659. In *Barrera,* Sandra Alves, a named insured, struck Eva Barrera in her car. (*Id.* at p. 662.) In conjunction with obtaining the insurance, Sandra's husband made the false representation his license to drive had not been suspended, revoked, or refused in the prior five years. (*Id.* at p. 665.) While the evidence on this point was in dispute, the California Supreme Court accepted the trial court's finding the insured misrepresented his driving record. (*Ibid.*) After she

---

*See footnote, *ante*, page 392.

obtained a judgment against the insureds (the Alveses), Barrera sued the Alveses' insurance company to obtain payment of the judgment. (*Id.* at p. 662.) The insurance company filed a cross-claim against its insured and Barrera claiming the policy should be rescinded *ab initio* based on the insured's misrepresentations when he obtained the insurance. (*Ibid.*)

The Supreme Court held in *Barrera, supra,* 71 Cal.2d 659, that despite the misrepresentation of the insured, in order to preserve its right to rescind a policy of insurance based on that misrepresentation, "an automobile liability insurer must undertake a reasonable investigation of the insured's insurability within a reasonable period of time from the acceptance of the application and the issuance of a policy. This duty directly inures to the benefit of third persons injured by the insured. Such an injured party, who has obtained an unsatisfied judgment against the insured, may properly proceed against the insurer; the insurer cannot then successfully defend upon the ground of its own failure reasonably to investigate the application." (*Id.* at p. 663.)

The *Barrera* court concluded this obligation to investigate derived principally from the public policy underlying California's Financial Responsibility Law and the "quasi-public" nature of the insurance business. (*Barrera, supra,* 71 Cal.2d at pp. 667-668.)

The public policy underlying the Financial Responsibility Law (Veh. Code, § 16000 et seq.) "aims 'to make owners of motor vehicles financially responsible to those injured by them in the operation of such vehicles.' [Citation.]" (*Barrera, supra,* 71 Cal.2d at pp. 670-671.) Its main objective is to give " ' "monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others." ' [Citation.]" (*Id.* at p. 671.)

The "quasi-public" nature of an insurance contract requires the court to "look to the reasonable expectation of the public and the type of service which the entity holds itself out as ready to offer." (*Barrera, supra,* 71 Cal.2d at p. 669.) The reasonable expectation of the public is that insurance companies provide them with insurance. (*Ibid.*) This expectation would be frustrated if the courts allowed an insurance company to "perpetually postpone the investigation of insurability and concurrently retain its right to rescind [the insurance policy] until the injured person secures a judgment against the insured and sues the carrier." (*Id.* at p. 670.)

Based on these two public policy considerations, the court in *Barrera* concluded, "[f]ailure of the automobile liability insurer reasonably to investigate the insurability of the insured within a reasonable time after issuance

of the policy, as described above, results in the loss of the carrier's right to rescind, as opposed to its right to cancel, the policy. Thus, if, in such a case, the insurer has not timely rescinded an automobile liability policy prior to an accident in which the insured negligently injures a third person, the policy necessarily remains in effect at least through the time of the accident; the insurer cannot thereafter rescind, but only cancel the policy." (*Barrera, supra,* 71 Cal.2d at p. 681.)

USAA argues this duty announced over 30 years ago by our Supreme Court in *Barrera, supra,* 71 Cal.2d 659, is inapplicable to the addition of a car to an existing policy. We disagree.

The request to add a new car to an existing policy raises the same concerns that led the *Barrera* court to impose the duty to investigate in the first place. This application for insurance is similar to the addition of a new driver to a policy. Under *Barrera, supra,* 71 Cal.2d 659, the insurer has the obligation to investigate the insurability of the new driver to preserve its right to rescission based on misrepresentations of the insured. The driver may have an undisclosed physical or mental disability that renders the driver uninsurable or may not meet the insurance company's underwriting criteria based on his or her driving record. The two public policy considerations recited by *Barrera* require the insurance company to investigate to preserve its right to rescind the policy in the event of a misrepresentation concerning the driver's suitability for insurance.

Similar to a new driver, a new car may have special features that render it uninsurable by a particular insurance company. The engine may be too big. The car may not be street legal. Further, as demonstrated by the facts of this case, the car may be used for unacceptable purposes, i.e., as a taxicab or for racing. In this sense, adding a new car is similar to adding the new driver to the policy. It requires the insurance company to conduct a reasonable investigation within a reasonable period of time. Requiring a prompt and reasonable investigation furthers the critical public policy goal of California's Financial Responsibility Law in providing monetary compensation to members of the driving public who are injured by their fellow drivers.

A contrary rule would defeat the public's expectation for insurance companies and allow the insurer to avoid investigating these features until the car is in an accident, thus allowing the insurance company to collect premiums for a car without the risk associated with the policy in violation of its public obligations as an insurance company. The contrary rule would mislead the owner into believing he or she is insured, when, in fact, he or she is not: This would discourage the insured from obtaining insurance that actually does cover the insured.

USAA contends the duty to investigate does not re-arise every time the insured makes a change to the policy, citing *International Service Ins. Co. v. Gonzales* (1987) 194 Cal.App.3d 110, 120 [239 Cal.Rptr. 341]. As we explained in *Gonzales,* a simple renewal of the existing policy does not trigger the insurer's obligation to reinvestigate its insured. (*Ibid.*) Adding a new car, however, is different.

In *International Service Ins. Co. v. Gonzales, supra,* 194 Cal.App.3d 110, Billy Bob Jones renewed the insurance on a 1980 Buick he used to jointly own with his wife Marie. (*Id.* at p. 114.) Billy Bob and Marie got divorced and the Buick was transferred into Marie's name. (*Id.* at pp. 114-115.) Marie's new husband Larry Cross got into an accident and submitted a claim to Billy Bob's insurance carrier. (*Id.* at p. 114.) Under the express terms of the policy, Marie was not covered because she was no longer married to Billy Bob. (*Id.* at pp. 117-118.) The Buick was not covered because Billy Bob no longer owned an interest in it. (*Id.* at p. 117.) The third party who was injured claimed the insurance company should be estopped from denying coverage when it failed to investigate the change of circumstances upon the renewal of the policy. (*Id.* at pp. 119-120.) We concluded, "[t]his argument is unpersuasive. The cited case pertained to the initial insurability of an applicant for insurance. In this case plaintiff insurer did investigate the initial insurability of Marie Jones. We find no authority and defendant cites us to none to support the contention that an insurer must reinvestigate the insurability of an applicant each time the policy is renewed." (*Id.* at p. 120.)

*Gonzales* has no application here. The addition of a new vehicle or a new driver is significantly different than the renewal of an existing policy for an existing insured on an existing insured's automobile as set forth in *Gonzales.* In the renewal case, there is no duty to the insurer to conduct a new investigation for each renewal because more than likely nothing material to the insurance relationship has changed. Requiring the insurer to reverify the information it already obtained would not satisfy the public policy of providing compensation to those injured on the highways. It would in all likelihood be a frivolous exercise. The same can be said for a request to increase the limits of coverage or the types of coverage for existing insureds and existing cars. However, as we have already discussed above, a change to a policy adding a car changes the status quo. It raises a whole host of new issues of insurability that the insurer must investigate if it seeks to retain its right to rescind the policy based on the new car or the use thereof.

Here, we conclude USAA had an obligation to conduct a reasonable investigation into the insurability of the cars Hall requested it add to her policy within a reasonable amount of time from the application for insurance. We must next consider whether we can determine as a matter of law whether USAA met that obligation.

## IV

*Whether USAA Conducted a Reasonable Investigation Is a Question of Fact*

Pegos argues USAA failed to conduct a reasonable investigation as a matter of law because USAA did nothing more than ask Hall questions about her intended use of the car. This is ultimately a question of fact for the trier of fact to determine.

The court in *Barrera* assumed the insured misrepresented the facts to the insurer in conjunction with the application. (*Barrera, supra,* 71 Cal.2d at p. 665.) Moreover, the insurer conducted no further investigation beyond asking the insured questions about his driving record. (*Id.* at pp. 665-666.) On this fact pattern, the *Barrera* court reversed and remanded the case for retrial. (*Id.* at p. 682.) ■ "Whether or not the automobile liability insurer has breached its duty to the public to make a reasonable investigation within a reasonable time after the issuance of the policy ordinarily constitutes a question for the trier of fact." (*Id.* at p. 681.) On remand, the *Barrera* court directed the trial court to consider the following factors in determining whether the insurance company conducted a reasonable investigation: "the cost of obtaining the information from the Department of Motor Vehicles, the availability of this information from the department or elsewhere, . . . and the general administrative burden of making such an investigation. These factors must be weighed against the importance of the protection of innocent members of the public against the consequences of automobile owners driving with voidable liability policies." (*Id.* at p. 682, fn. omitted.)

In *Fireman's Fund American Ins. Co. v. Escobedo* (1978) 80 Cal.App.3d 610 [145 Cal.Rptr. 785], the insured misrepresented he had no mental disabilities at a time when he had been diagnosed as suffering from a residual schizophrenic reaction associated with severe anxiety. The insurance company obtained an investigative report about the insured, but chose not to obtain a slightly more expansive report that would have essentially the same cost. (*Id.* at pp. 614-615.) The court echoed *Barrera*'s holding that "[t]he reasonableness of the insurer's investigation of insurability is ordinarily a question of fact." (*Id.* at p. 620.) On these facts, the court concluded it could not "be said that, as a matter of law, the [insurance company's] investigation was unreasonable." (*Id.* at p. 621.)

■ Here, our facts are almost identical to those in *Barrera*. USAA contends Hall misrepresented the facts and Pegos asserts USAA conducted no additional investigation other than requesting the information from Hall. Merely asking the insured questions about his or her driving record or his or

her car may or may not constitute a reasonable investigation under the circumstances. The ultimate decision on that point is for the jury at trial in light of the factors identified by *Barrera*. Thus, we must remand this case for a trial on this issue where the trier of fact will be forced to resolve this issue based on the factors identified in *Barrera, supra,* 71 Cal.2d at page 682.

## CONCLUSION

For over 30 years, the law of this state has required insurers to conduct a reasonable investigation of the insurability of insureds before they may rescind automobile insurance policies based on an insured's misrepresentation in an application when innocent third parties have been injured by the insured's actions. The same rule applies to the addition of a new car to the policy.

## DISPOSITION

The judgment is reversed. Pegos shall recover costs on appeal. (Cal. Rules of Court, rule 27(a).)

Sims, Acting P. J., and Morrison, J., concurred.

A petition for a rehearing was denied April 21, 2003, and respondent's petition for review by the Supreme Court was denied July 9, 2003. George, C. J., and Brown, J., did not participate therein.