**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PHILADELPHIA INDEMNITY INSURANCE
COMPANY, a Pennsylvania
Insurance Company,
                    *Plaintiff-Appellee,*

              v.

RICHARD FINDLEY; DENIKAN
BREWER; DESIRIE BREWER; DANE
FLORES; DELESA FLORES; JAVIER
CORTEZ,

                         *Defendants,*

              and

BLANCA MONTES-HARRIS; MONICA
ARREDONDO; CAMILLA TONI HARRIS,
              *Defendants-Appellants.*

No. 03-56651

D.C. No.
CV-02-03616-
RSWL

499

PHILADELPHIA INDEMNITY INSURANCE
COMPANY, a Pennsylvania
Insurance Company,
                    *Plaintiff-Appellee,*

            v.

RICHARD FINDLEY; DENIKAN
BREWER; DESIRIE BREWER; DANE
FLORES; DELESA FLORES; BLANCA
MONTES-HARRIS; MONICA
ARREDONDO; CAMILLA TONI HARRIS,
                    *Defendants,*

            and

JAVIER CORTEZ,
                    *Defendant-Appellant.*

No. 03-56652

D.C. No.
CV-02-03616-
RSWL

ORDER

Filed January 13, 2005

Before: Betty B. Fletcher, John T. Noonan, and
Richard A. Paez, Circuit Judges.

**ORDER**

PAEZ, Circuit Judge:

We certify to the California Supreme Court the question set forth in Part II of this order. All further proceedings in this case are stayed pending final action by the California Supreme Court, and this case is withdrawn from submission until further order of this court.

I.   CAPTION AND COUNSEL

A.   The caption of the case is as follows:[1]

PHILADELPHIA INDEMNITY INSURANCE COMPANY, a Pennsylvania Insurance Company,
        Plaintiff - Appellee,
    v.
RICHARD FINDLEY; DENIKAN BREWER; DESIRIE BREWER; DANE FLORES; DELESA FLORES; JAVIER CORTEZ,
        Defendants,
   and,
BLANCA MONTES-HARRIS; MONICA ARREDONDO; CAMILLA TONI HARRIS,
        Defendants - Appellants.

PHILADELPHIA INDEMNITY INSURANCE COMPANY, a Pennsylvania Insurance Company,
        Plaintiff - Appellee,
    v.
RICHARD FINDLEY; DENIKAN BREWER; DESIRIE BREWER; DANE FLORES; DELESA FLORES; BLANCA MONTES-HARRIS; MONICA ARREDONDO; CAMILLA TONI HARRIS,
        Defendants,
   and,
JAVIER CORTEZ,
        Defendant - Appellant.

B.   The names and addresses of counsel are:

*For Blanca Montes-Harris, et al.:* Robert Marc Hindin, Hindin & Abel LLP, 11601 Wilshire Blvd., Suite 2490, Los Angeles, California 90025.

---

[1]The certified question pertains to two consolidated appeals: Nos. 03-56651 and 03-56652.

*For Javier Cortez:* David R. Denis, 633 W. Fifth Street, 70th Floor, Los Angeles, California 90071.

*For Philadelphia Indemnity Insurance Company:* David M. Glasser, Greenspan, Glasser & Rosson, 300 Corporate Pointe, Suite 375, Culver City, California 90025. James E. Green, Jr. and Julia Forrester-Sellers, Conner & Winters, 15 East 5th Street, Suite 3700, Tulsa, Oklahoma 74103-4344.

## II.    QUESTION OF LAW

Pursuant to Rule 29.8(a) of the California Rules of Court, we respectfully request the Supreme Court of California to decide the certified question presented below. There is no controlling precedent regarding the certified question, the resolution of which may be determinative of this appeal. Our phrasing of the question should not restrict the Court's consideration of the issues involved. We agree to accept the decision provided by the California Supreme Court. The question of law to be decided is:

> Does the duty of an insurer to investigate the insurability of an insured, as recognized by the California Supreme Court in *Barrera v. State Farm Mut. Auto. Ins. Co.*, 71 Cal. 2d 659, 79 Cal. Rptr. 106, 456 P.2d 674 (1969), apply to an automobile liability insurer that issues an excess liability insurance policy in the context of a rental car transaction?

## III.    STATEMENT OF FACTS

Appellants Javier Cortez, Blanca Montes-Harris, Monica Arredondo, and Camilla Toni Harris appeal from the district court's judgment declaring that Appellee Philadelphia Indemnity Insurance Company ("Philadelphia") has no liability for damages appellants sustained in an accident involving a rental car driven by Alric Burke. Burke purchased an excess liability insurance policy issued by Philadelphia when he rented the

car from Budget Rent-A-Car ("Budget"). The policy provided third-party liability coverage in excess of the primary minimum statutory coverage ($15,000 per person for bodily injury, with a maximum of $30,000 per occurrence) up to $1,000,000, subject to an exclusion, among other things, for bodily injury or property damage arising out of the use, or permitting the use, of a rental car that was obtained through fraud or misrepresentation.

At the time of the rental transaction on June 6, 2001, Burke, a resident of Arizona, presented to Budget what appeared to be a valid Arizona driver's license. The State of Arizona in fact had suspended Burke's driver's license and driving privileges over two months earlier. The Budget rental agent took Burke's license, made a photocopy of it, and asked Burke to sign the rental agreement.

Four days later, on June 10, 2001, Burke was involved in a car accident in Los Angeles, California while driving the car he had rented from Budget. The accident injured numerous people, including appellants Javier Cortez, Blanca Montes-Harris, Monica Arredando, and Camilla Toni Harris. Cortez brought suit against Budget and Burke in Los Angeles County Superior Court for damages arising out of the accident. Montes-Harris, Arredando, and Toni Harris filed a separate action against Budget and Burke in the same court.

On May 3, 2002, Philadelphia filed suit in federal district court seeking a judgment declaring that Philadelphia has no liability for damages arising out of the June 10, 2001 accident. A bench trial was held on February 4, 2003. In its findings of fact and conclusions of law, the district court found that (1) Burke negligently misrepresented to Budget that he had a valid driver's license and (2) the excess liability policy excluded coverage for rentals obtained through misrepresentation. Thus, the court declared that Philadelphia had no liability for damages arising out of the accident.

On March 27, 2003, Cortez filed an *ex parte* application for relief from judgment, which was joined by Montes-Harris, Arredando, and Toni Harris. The application asked the court to grant relief on the basis of a recent California Court of Appeal decision in *United Servs. Auto. Ass'n v. Pegos*, 107 Cal. App. 4th 392, 131 Cal. Rptr. 2d 866 (2003), which clarified and confirmed the law as stated by the California Supreme Court in *Barrera v. State Farm Mut. Auto. Ins. Co.*, 71 Cal. 2d 659, 79 Cal. Rptr. 106, 456 P.2d 674 (1969). The district court denied the application on April 8, 2003. On March 28, 2003, Montes-Harris, Arredando, and Toni Harris filed a notice of appeal. Cortez joined the appeal on April 11, 2003.

## IV.   THE NEED FOR CERTIFICATION

We respectfully request the California Supreme Court to decide the certified question of law because the decision could determine the outcome of this appeal, and because the decisions of the California appellate courts provide no controlling precedent on the question. *See* Cal. R. of Ct. 29.8(a)(1) & (2). Furthermore, whether *Barrera* applies to excess liability insurers in the rental car context is an issue of significant public policy importance. *See Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003) ("The certification procedure is reserved for state law questions that present significant issues, including those with important public policy ramifications, and that have not yet been resolved by the state courts."). Following is a summary of the relevant case law and the parties' arguments with respect to this issue.

### A.   The *Barrera* Decision

In *Barrera v. State Farm Mutual Auto. Ins. Co.*, 71 Cal. 2d 659, 79 Cal. Rptr. 106, 456 P.2d 674 (1969), the plaintiff, who had been injured in a car accident, sued the insured driver for negligence and obtained an unsatisfied judgment. *Id.* at 664-66. The plaintiff then sued the driver's insurer,

State Farm, to recover her damages, and State Farm brought a cross-action for declaratory relief seeking to void the policy on the ground that it was obtained through misrepresentation. The insured had claimed on his application that his license had not been suspended in the last five years when in fact it had. *Id.* at 665. The trial court found that rescission was justified on the basis of this misrepresentation and entered judgment for State Farm. *Id.* at 662.

The California Supreme Court accepted the trial court's finding of misrepresentation but reversed its decision, holding that automobile liability insurers have a duty, which inures directly to the benefit of those who may be injured by an insured, to make a reasonable investigation of insurability within a reasonable time of issuing a policy. *Id.* at 663, 677 n.14. Where an insurer fails to conduct a reasonable investigation, it loses its right to rescind the policy on the basis of an insured's misrepresentation. *Id.* at 678. Thus, an injured party who obtains an unsatisfied judgment against the insured may recover the amount of the judgment, within the policy limits, from the insurer. *Id.* at 667. An insurer that fulfills its obligation to reasonably investigate, on the other hand, retains the right to rescind and thereby avoid liability to injured third parties. *Id.* at 678.

The *Barrera* court noted that even where an insurer fails to meet its duty to reasonably investigate, it does not "forfeit[ ] all remedies *against the insured* for his misrepresentations." *Id.* at 681. For instance, an insurer may sue the insured for misrepresentation after satisfying the injured parties' claims. *Id.* Additionally, if the insured sues the insurer after paying a judgment to an injured party, the insurer may defend such an action on the ground of misrepresentation. *Id.* Further, although the policy must remain in effect at least through the time of the accident, the insurer may cancel the policy thereafter. *Id.* at 681.

The court held that whether an insurer has breached its duty to the public to make a reasonable investigation within a rea-

sonable time is generally a question of fact. *Id.* at 682. *Barrera* held that three factors should be considered in assessing the reasonableness of an insurer's conduct—1) the cost of obtaining information from the Department of Motor Vehicles (DMV), 2) the availability of this information from the DMV or elsewhere, and 3) the administrative burden of making this investigation—factors that should be weighed against the importance of protecting innocent members of the public from the consequences of voidable liability policies of drivers who injure them. *Barrera*, 71 Cal. 2d at 682, 79 Cal. Rptr. 106, 456 P.2d 674. Thus, the court remanded to the trial court for a determination of whether State Farm acted reasonably in light of its duty. *Id.*

The *Barrera* court explained that the rationale for its decision was based on both the quasi-public nature of the insurance business and the public policy underlying California's Financial Responsibility Law.[2] First, the insurer's role as a quasi-public entity requires a court, when determining the rights and responsibilities of the insurer, to "look to the reasonable expectation of the public and the type of service which the entity holds itself out as ready to offer." *Id.* at 669. The court noted that "[t]he reasonable expectation of both the public and the insured is that the insurer will duly perform its basic commitment: to provide insurance." *Id.*

---

[2]At the time of the California Supreme Court's decision in *Barrera*, California's Financial Responsibility Law provided that after an accident in which a driver negligently caused injuries to another, the driver would be financially responsible for those injuries and, if he was unable to cover the damages, his license would be suspended. *See id.* at 670 n.9; former Cal. Veh. Code § 16000 et seq. The California Legislature amended the law in 1974 to require every owner or driver of a motor vehicle to maintain an approved form of financial responsibility at all times and to be able to provide proof of this responsibility after an accident. Cal. Veh. Code § 16054; *Anacker v. Sillas*, 65 Cal. App. 3d 416, 421, 135 Cal. Rptr. 537 (1976). The Financial Responsibility Law provides for a minimum level of insurance coverage. Cal. Veh. Code §§ 16054, 16056.

Second, the recognition of this duty furthers the public policy underlying California's Financial Responsibility Law, which seeks "to make owners of motor vehicles financially responsible to those injured by them in the operation of such vehicles." *Id.* at 670-71 (internal quotations omitted). The court explained that a contrary rule, allowing insurers to delay investigation of insurability until it suited their financial interests, would "directly thwart[ ] a chief purpose of the Financial Responsibility Law: to provide compensation for those injured through no fault of their own." *Id.* at 671-72 (internal quotations omitted).

B.   Extension of *Barrera* to Excess Liability Insurers in the Rental Car Context

Appellants argue that *Barrera* applies to all automobile liability insurers, including excess insurers. Therefore, appellants assert that Philadelphia may not avoid liability for their damages by rescinding Burke's policy on the ground that he misrepresented his status as a licensed driver.[3] Appellants argue that the *Barrera* court did not limit its holding to primary insurers; rather, it referred to the duty of "the automobile liability insurer" or "the carrier" in general. *See, e.g.*, 71 Cal. 2d at 681, 79 Cal. Rptr. 106, 456 P.2d 674 ("Failure of *the automobile liability insurer* reasonably to investigate the insurability of the insured within a reasonable time after issuance of the policy . . . results in the loss of *the carrier's* right to rescind . . . .") (emphasis added).

Further, appellants argue that the two rationales of the *Barrera* decision support its extension to excess liability insurers. First, with respect to the quasi-public nature of the insurance industry, appellants assert that the public's reasonable expec-

---

[3] Appellants do not contest the district court's finding that Burke misrepresented his status. Rather, they argue that Philadelphia owed a duty to third parties to reasonably investigate Burke's insurability despite this misrepresentation, and that Philadelphia failed to meet this duty.

tation that insurers will perform their basic commitment to provide insurance, *see id.* at 669, is just as applicable to excess insurers as it is to primary insurers. Second, appellants contend that the public policy underlying the Financial Responsibility Law, to compensate members of the public who are injured by an insured, *see id.* at 671-72,[4] is broad enough to extend to excess liability insurers, as long as excess coverage is needed to compensate for their injuries.

Philadelphia argues that *Barrera* only applies to primary liability insurers, and therefore the district court properly voided Burke's policy on the basis of his misrepresentation and correctly concluded that Philadelphia has no liability for damages arising out of the accident. Philadelphia contends that the reasoning of the *Barrera* decision does not support its application to excess liability insurers because the Financial Responsibility Law requires that primary insurance policies provide minimum levels of coverage, and excess liability policies need not meet these requirements. *See* Cal. Veh. Code §§ 16054, 16056; Cal. Ins. Code § 11580.1(a). Further, Philadelphia notes that excess insurance policies may contain exclusions that are broader than those allowed for primary policies. *See Hertz Corp. v. Home Ins. Co.*, 14 Cal. App. 4th 1071, 1077, 1079 & n.8, 18 Cal. Rptr. 2d 1071 (1993) (stating that an excess policy may contain an exclusion for drunk driving whereas a primary policy is prohibited from containing such an exclusion). Philadelphia argues that the public policy underlying the Financial Responsibility Law, and therefore

---

[4]*See also id.* at 678 ("The purpose of the imposition of such a duty is to reduce the number of motorists on our highways who are, in fact, financially irresponsible; the goal is to protect the motoring public generally against the inability to recover compensation for death or injuries caused by automobile accidents."); *id.* at 680 (stating that the purpose of the duty is "to avoid the possibility that the third person will be unable to obtain compensation for the loss"); *id.* at 673 (analogizing the philosophy underlying the Financial Responsibility Law to the rationale underlying the established "duty upon *all insurers* to act promptly upon an application for insurance") (emphasis added).

underlying the *Barrera* decision, is to ensure that those injured in car accidents are covered by policies that provide *minimum* levels of coverage;[5] thus, issuers of excess liability policies should not be subject to the duty to investigate established in *Barrera*.

Although no California appellate court has addressed whether the duty to investigate recognized in *Barrera* applies to excess insurers, subsequent decisions of the California Court of Appeal have confirmed that *Barrera* is still good law as applied to automobile liability insurers in general. For instance, in *United Servs. Auto. Ass'n v. Pegos*, 107 Cal. App. 4th 392, 131 Cal. Rptr. 2d 866 (2003), the California Court of Appeal held that the duty recognized in *Barrera* applies when an insured adds a new car to an existing insurance policy. The court stated:

> For over 30 years, the law of this state has required insurers to conduct a reasonable investigation of the insurability of insureds before they may rescind automobile insurance policies based on an insured's misrepresentation in an application when innocent third parties have been injured by the insured's actions. The same rule applies to the addition of a new car to the policy.

*Id.* at 401; *see also Fireman's Fund Am. Ins. Co. v. Escobedo*, 80 Cal. App. 3d 610, 621, 145 Cal. Rptr. 785 (1978) (holding that the duty to investigate insurability under *Barrera* applies

---

[5]In at least two instances, the *Barrera* court referenced the minimum coverage requirements of the Financial Responsibility Law. *See, e.g.*, 71 Cal. 2d at 678, 79 Cal. Rptr. 106, 456 P.2d 674 ("Prompt notice to the insured of the revocation of his policy of insurance will most certainly impel him to seek other means of compliance with the potential requirements of the Financial Responsibility Law."); *id.* ("After the insured person has obtained a judgment against the insured, therefore, he may compel the insurer to pay the judgment to the extent of the monetary limits set forth in the Financial Responsibility Law.").

to assigned risk liability insurers and the duty may not be delegated); *cf. Am. Cont'l Ins. Co. v. C & Z Timber Co.*, 195 Cal. App. 3d 1271, 1279, 241 Cal. Rptr. 466 (1987) (holding that the duty imposed in *Barrera* "was compelled by statutory public policy considerations emanating from the automobile Financial Responsibility Law" and does not apply to aircraft insurers); *Fireman's Fund Ins. Co. v. Superior Court*, 75 Cal. App. 3d 627, 633, 142 Cal. Rptr. 249 (1977) (same).

Finally, Philadelphia argues that even if the duty to investigate applies to excess insurers, Budget satisfied this duty as a matter of law by complying with Cal. Veh. Code §§ 14604, 14608(b), which require rental car agents to inspect the driver's license of the renter and compare the signature on the license with the signature written in the agent's presence. Appellants counter that Budget's statutory obligations *as a rental car owner* conducting a rental transaction are entirely distinct from Philadelphia's duty to conduct a reasonable investigation *as an insurer*. Appellants argue that Philadelphia breached this duty as a matter of law, or in the alternative, that whether Philadelphia met its duty is a question of fact. *See Barrera*, 71 Cal. 2d at 682, 79 Cal. Rptr. 106, 456 P.2d 674.

In sum, whether *Barrera* applies to excess liability insurers in the rental car context could determine the outcome of this appeal, and is a question of significant public policy importance that has not been resolved by the California appellate courts. Accordingly, we respectfully request that the California Supreme Court decide the certified question.

## V.   ACCOMPANYING MATERIALS

The clerk of this court is hereby directed to file in the California Supreme Court, under official seal of the Ninth Circuit Court of Appeals, copies of all relevant briefs and an original and ten copies of this request with a certificate of service on the parties, pursuant to California Rules of Court 29.8(c) & (d).

IT IS SO ORDERED.

_____
The Honorable Richard A. Paez
United States Circuit Judge

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO
————————

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2005 Thomson/West.